**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **SALVATORE ROMANO**, *pro se*, <br>     *Plaintiff* <br><br> v. <br><br> **PATRICIA A. COYNE-FAGUE**, in her individual capacity and official capacity as Director of the Rhode Island Department of Corrections; **ET AL.**, <br>     *Defendants* | C.A. No. 1:19-cv-00370-WES-LDA |

**STATE DEFENDANTS' OBJECTION TO**
**PLAINTIFF'S MOTION TO APPOINT COUNSEL**

**NOW COME** State Defendants and hereby object to Plaintiff Salvatore Romano's ("Plaintiff" or "Romano") Motion to Appoint Counsel. As grounds thereof, State Defendants aver that no exceptional circumstances are present that warrant appointment of counsel.

**FACTS AND TRAVEL**

Plaintiff is an inmate presently incarcerated at the Adult Corrections Institute ("ACI"). On July 2, 2017, Plaintiff and another inmate, Richard Dupont ("Dupont"), were released from the Disciplinary Confinement Unit at the Maximum Security Facility of the ACI, where they had been placed after fight that had broken out between the two men in the previous weeks. See *Press Release: Two Inmates Found Guilty in ACI Stabbing*, State of Rhode Island (Feb. 7, 2020), available at: https://www.ri.gov/press/view/37669; *see also Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 503 (D.R.I. 2020) ("Federal courts can take judicial notice of facts on government websites where those facts are 'not subject to reasonable dispute.'"); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010); Fed. R. Evid. 201(b). Plaintiff was permitted to return to his cell and then proceeded to the recreation yard to walk around. *Id.* After some time, three inmates,

1

Justin Santerre ("Santerre"), Jeffrey Wilson ("Wilson"), and Brian Audette ("Audette"), all of whom were friends with Dupont, suddenly approached Plaintiff in the recreation yard. *Id.* Santerre, Wilson, and Audette quickly tackled Plaintiff to the ground and proceeded to cut and stab Plaintiff multiple times with concealed weapons. *Id.* Multiple correctional officers sprinted to the scene and halted the attack within approximately twenty (20) seconds, deploying OC Spray[1] taking Santerre, Wilson, and Audette into custody. *Id.* Officers recovered several weapons from the attackers, including a 10-inch metal rod sharpened at the end, one razor blade with a deodorant wrapper wrapped around it to serve as a handle; and one plain razor blade. *Id.*

Following the attack, RIDOC medical staff promptly triaged Romano until he was stable enough to be transported to Rhode Island Hospital for further medical treatment. *Id.* After returning to the ACI from Rhode Island Hospital, Romano was placed in administrative confinement for his safety and subsequently transferred to protective custody. *Id.* Members of the State Police Major Crimes Unit and the RIDOC Special Investigations Unit conducted a thorough investigation of the attack on Romano. *Id.* In February 2018, the State charged the three (3) inmates involved in the attack with assault with a dangerous weapon, felony assault, conspiracy, carrying concealed weapons, and disorderly conduct. *Id.*; *see State of Rhode Island v. Justin Santerre*, C.A. No. P2-2018-0403A (R.I. Super. Ct. judgment entered July 24, 2020); *State of Rhode Island v. Brian Audette*, C.A. No. P2-2018-0403B (R.I. Super. Ct. judgment entered Jan. 22, 2019); *State of Rhode Island v. Jeffery Wilson*, C.A. No. P2-2018-0403C (R.I. Super. Ct. judgment entered July 17, 2020).

---

[1] Oleoresin Capsicum (OC) Spray – also known as "pepper" spray, is a chemical compound that irritates the eyes to cause tears, pain, and temporary blindness.

# ARGUMENT

## I. THE COURT PREVIOUSLY DENIED PLAINTIFF'S PRIOR MOTIONS TO APPOINT COUNSEL IN THIS CASE

Plaintiff has requested appointment of counsel on two prior occasions in this case. *See* Motion to Appoint Counsel (ECF 14); Motion to Appoint Counsel (ECF 17). The Court denied both motions. *See* Text Order (Sep. 18, 2020). While the State did not have the opportunity to respond to Plaintiff's previous motions to appoint counsel, the circumstances today remain unchanged. Plaintiff has not shown the presence of any exceptional circumstances or complex legal issues. Moreover, Plaintiff has consistently demonstrated throughout this case his ability to file motions and pleadings. For these reasons alone, Plaintiff's Motion to Appoint Counsel (ECF 42) should be denied, and Plaintiff should be estopped from filing successive motions.

## II. PLAINTIFF FAILS TO DEMONSTRATE THAT THE PRESENCE OF EXCEPTIONAL CIRCUMSTANCES

Plaintiff has not provided any particular reason why his case presents an "exceptional circumstance" that justifies the appointment of a free attorney, particularly at this stage of litigation. It is a bedrock principle that "[t]here is no absolute constitutional right to a free lawyer in a civil case." *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991); *see also Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 257 (1st Cir. 2003); *King v. Greenblatt*, 149 F.3d 9, 14 (1st Cir. 1998) ("This being a civil case, there is no constitutional right to counsel . . .") (internal citation omitted). Inmates have the right to access the courts, but that right does not "require the provision of counsel in civil cases." *Boivin v. Black*, 225 F.3d 36, 41 (1st Cir. 2000). The First Circuit has held that in civil cases brought by inmates, the right of access to courts guarantees neither the appointment of counsel, nor the ability to litigate with maximum effectiveness. *Id.* at 42; *see also Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 26-27 (1981). Rather, the right of meaningful

access to the courts is the right to the resources and minimal assistance needed to demonstrate a legal claim. *Carter v. Fair*, 786 F.2d 433, 435 (1st Cir. 1986). In order to demonstrate that the appointment of free legal counsel under 28 U.S.C. § 1915(e)(1), the movant must demonstrate that he is indigent and that exceptional circumstances are present, such that a denial of counsel is likely to result in fundamental unfairness impinging on his due process rights. *DesRosiers*, 949 F.2d at 23. This determination is made based on the totality of the situation, including the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself. *Id.* at 24; see also *Cookish v. Cunningham*, 787 F.2d 1, 2-3 (1st Cir. 1986). The State will address each of these issues in turn.

### A. Plaintiff's claims against State Defendants lack merit

Although the basis for many of Plaintiff's claims is unclear, the Amended Complaint alleges a variety of federal claims for 42 U.S.C. § 1983 violations of the First, Fifth, Eighth, and Fourteenth Amendments, as well as state tort claims for Negligence, False Imprisonment, and claims for "obstruction of justice", "larceny", and "violations of restraining orders". *See* Amended Compl. (ECF 21). While the sufficiency of Plaintiff's Amended Complaint is highly questionable, notably, the underlying basis is identical to Plaintiff's original Complaint. It appears that the gravamen of Plaintiff's legal claims concerns the attack carried out by inmates Santerre, Wilson, and Audette. *See id.* at ¶¶ 49-67. Whereas, with respect to State Defendants, Plaintiff's claims largely concern the circumstances of Plaintiff's placement into Administrative Confinement for his own protection following the attack. *See id.* at ¶¶ 68-100. During this time, RIDOC officials determined whether Plaintiff was eligible to be transferred to the Protective Custody Unit. *See id.* at ¶ 76 ("I wrote … classification begging to be placed into protective custody."); *see also* Report and Recommendation (ECF 3) ("He appears to claim that the assault was followed by a pattern of

4

unlawful treatment and unsupported discipline."). Plaintiff's claims also concern supervisory liability and Plaintiff's dissatisfaction with the subsequent criminal investigation and prosecution of Santerre, Wilson, and Audette. *See* Amended Compl. at ¶¶ 69-71. Such claims are simply without merit. *See* R.I. Gen. Laws §§ 42-56-30, 42-56-31 (establishing the duties and powers of the Classification Board within RIDOC); *Bishop v. State*, 667 A.2d 275 (R.I. 1995) (holding inmates have no constitutional or statutory protected interest in state's prison-inmate classification process because the director of department of corrections has unfettered discretion under R.I. Gen. Laws § 42-56-30); *cf Bandoni v. State*, 715 A.2d 580, 582 (R.I. 1998) (declining to recognize a legal cause of action under the Crime Victims' rights amendment to the Rhode Island Constitution); *see also Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (prosecutors have absolute immunity under § 1983); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("purpose rather than knowledge" is required to impose supervisory liability in a § 1983 action").

The remainder of Plaintiff's claims, appear to be frivolous and unconnected. For example, the Amended Complaint names the former-Governor's secretary solely because Plaintiff's sister called to make an appointment with the former-Governor without success. *See* Report and Recommendation (ECF 3), at 1 n.2. Plaintiff also sues former-State Attorney General Peter Kilmartin and for failing to answer a letter Plaintiff sent him. *See* Amended Compl. at ¶ 71; Report and Recommendation (ECF 3), at 1-2. Plaintiff's claims against State Defendants lack merit and the instant Motion should be denied.

### B. Plaintiff's legal claims do not involve complex legal issues

Plaintiff here identifies no complex or nuance legal issues that this case presents. As described *infra*, Plaintiff's claims arise under § 1983 and Rhode Island state law. While Plaintiff complains that the large number of defendants named in this case presents certain practical

5

difficulties, that is a choice of Plaintiff's own making. Plaintiff should not be rewarded with a free lawyer because it. Plaintiff's Motion should be denied.

### C. Plaintiff has a demonstrable history of representing himself

Plaintiff has shown himself capable of performing legal work and engaging in the federal court process. While the State disputes that the Amended Complaint states a claim upon which relief may be granted, *see* Fed. R. Civ. P. 12(c), Plaintiff has demonstrated his ability to craft pleadings alleging a variety of federal constitutional claims for 42 U.S.C. § 1983 violations as well as claims arising under Rhode Island law. *See* Compl. (ECF 1); Amended Compl. (ECF 21). Plaintiff's Amended Complaint consists of a 24-page legal memorandum, naming approximately forty-four (44) defendants, which include several inmates that Plaintiff believes were involved in the attack[2] and numerous correctional officers and administrators, state police detectives, and state officials that Plaintiff claims were connected to the criminal investigation. *See* Amended Compl. (ECF 21). From the outset of this case, Plaintiff has demonstrated his capability to engage in the federal court process; he filed numerous motions with the Court, appeared before the Court for a Rule 16 scheduling conference, *see* Pretrial Scheduling Order (ECF 36), and participated in court ordered mediation. *See* Notice of ADR Hearing (ECF 38). Plaintiff has filed numerous motions throughout this litigation. *See e.g.*, ECF 2, 7, 9-10, 13-18, 22-23, 40-42, 43-47. Most recently, at the time of the filing of the State's objection, Plaintiff filed an interlocutory appeal with the First Circuit. *See* Notice of Appeal (ECF 49).[3] This Court has consistently denied motions for appointment of counsel in similar circumstances. *See e.g., Vangel v. Aul*, No. CA 45-CV-043-M-

---

[2] The Co-Defendant Inmates consist of Audette, Duponte, Setterre, Wilson, and Constantino Nardolillo. *See* Amended Compl. (ECF 21), at ¶¶ 44-48. It is unclear whether Plaintiff has served the Co-Defendant Inmates with the Amended Complaint.

[3] State Defendants reserve the right to respond to Plaintiff's pending motions, *see* ECF 43-48, upon further order of this Court, following the resolution of Plaintiff's interlocutory First Circuit appeal.

PAS, 2015 WL 710811, at *2 (D.R.I. Feb. 18, 2015) (plaintiff's motion was denied because he "has shown a basic understanding of court procedures and the ability to express himself in writing"); *Forbes v. Wall*, No. CA 14-322-ML, 2014 WL 4997289, at *6 (D.R.I. Oct. 7, 2014); *Mejia v. Charette*, No. 12-CV-449-JD, 2014 WL 29522, at *1-2 (D.R.I. Jan. 3, 2014); *Osei v. Wall*, No. CA 12-717-S, 2013 WL 3927803, at *2-3 (D.R.I. July 29, 2013); *Leverett-Mullen v. Nicholson*, No. CA 06 483 T, 2006 WL 3538963, at *1 (D.R.I. Dec. 7, 2006); *see also Neufville v. Coyne-Fague,* No. CV 20-005 WES, 2021 WL 322686, at *1 (D.R.I. Feb. 1, 2021), *aff'd,* No. 21-1158, 2021 WL 3730224 (1st Cir. June 2, 2021). Plaintiff's Motion should, likewise, be denied.

## CONCLUSION

**WHEREFORE**, State Defendants respectfully ask this Court to deny Plaintiff's Motion to Appoint Counsel.

Respectfully Submitted,

STATE DEFENDANTS,
By:

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Justin J. Sullivan*
Justin J. Sullivan (#9770)
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
150 South Main St. Providence, RI 02903
Tel: (401) 274-4400 | Ext. 2007
Fax (401) 222-2995
jjsullivan@riag.ri.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on Tuesday, December 13, 2022 I filed the within document via the ECF filing system and that a copy is available for viewing and downloading. I further certify that on Tuesday, December 13, 2022 I mailed a true and accurate copy of the within document via U.S. First Class mail, postage prepaid, to the following:

Salvatore Romano (state prisoner #70936)
Adult Correctional Institute
P.O. Box 8249
Cranston, RI 02920

                                                     */s/Justin J. Sullivan*